**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBERT BRANDES,                                   Case No. 1:17-cv-607

        Plaintiff,                                    Black, J.
                                                      Bowman, M.J.
  v.

NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robert Brandes filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In March 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging a disability onset date of January 8, 2013. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On May 10, 2016, ALJ Kevin W. Fallis held a video hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 37-71). On August 2, 2016, ALJ Fallis denied Plaintiff's application in a written decision. (Tr. 20-32). Plaintiff now seeks judicial review of the denial of his application for benefits.

At the time ALJ Fallis issued his decision, Plaintiff was 53 years old, defined as "closely approaching advanced age" under social security regulations. He earned his GED and has past relevant work as a welder. He alleges disability primarily due to back pain. (*See* Tr. 41, counsel's representation that the only severe impairment he was alleging was low back pain; Tr. 49-50).

Based upon the record and testimony presented, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, obesity, major depressive disorder, and polysubstance use disorder. (Tr. 22). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> [T]he claimant can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. The claimant requires a sit/stand option allowing the person to sit or stand alternatively provided this person is not off task for more than 10 percent of the work period. The claimant can occasionally perform pushing and pulling and operation of foot controls. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid even moderate use of hazardous machinery. The claimant must avoid all exposure to unprotected heights. The claimant requires work that is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and routine workplace changes. The claimant can tolerate only occasional and superficial interaction with the public.

(Tr. 25). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform his past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as marker, router, and an inspector/hand packager. (Tr. 31).

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 32).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) finding that Plaintiff retained the capacity to perform light work rather than only sedentary work; (2) failing to adequately consider his obesity; and (3) improperly assessing his credibility, pain and subjective complaints. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole.

*Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is substantially supported

#### 1. ALJ's RFC Determination

Plaintiff first asserts that the ALJ erred in determining that Plaintiff was capable of performing a range of light work, rather than restricting him to sedentary work. Due to Plaintiff's age, if the ALJ had restricted him to the "sedentary" exertional level, he would have been entitled to a presumption of disability under Grid Rule 201.14.

In determining that Plaintiff was not limited to sedentary work but instead could continue to perform work at the light exertional level, the ALJ gave "great weight" to the opinions of two non-examining consultants, Drs. Mikalov and Stroebel, both of whom opined that Plaintiff could perform work at the "light" level. (*See* Tr. 28, citing June 16, 2014 and September 8, 2014 reports at Tr. 78-81 and Tr. 89-93). However, Plaintiff points out that Drs. Mikalov and Stroebel also stated that they gave "great weight" to the June 5, 2014 report of the examining consultant, Dr. Phillip Swedberg. (Tr. 78, 91).

Plaintiff reasons that because the ALJ gave "great weight" to Drs. Mikalov and Stroebel, and those consultants in turn gave "great weight" to Dr. Swedberg's report, then the ALJ likewise must have given "great weight" to Dr. Swedberg's findings and opinions. (*See generally*, Tr. 323-326, 327-329). Plaintiff goes on to point out that Dr. Swedberg opined that Plaintiff's morbid obesity and low back pain, despite a normal gait with no evidence of radiculopathy, still would limit him to "a moderate amount of sitting, ambulating, standing, bending, kneeling pushing, pulling, lifting and carrying heavy objects." (Tr. 329). In addition, Plaintiff notes that both Dr. Mikalov and Stroebel found Plaintiff's "statements regarding symptoms" to be "fully credible." (Tr. 78, 91). Again,

5

extrapolating from that "credibility" finding by the consultants and relying on the ALJ's attribution of "great weight" to their opinions, Plaintiff asserts that the ALJ's failure to fully credit all of Plaintiff's hearing testimony represents a "material inconsistency" that requires reversal. Plaintiff maintains that both Dr. Swedberg's report and his own subjective testimony at the administrative hearing limit him to "sedentary work only." (Doc. 5 at 4).

Imploring this Court to draw the referenced inferences based upon the "great weight" given to the consulting opinions, Plaintiff argues that the ALJ's decision is internally inconsistent. He seeks the award of benefits based upon an alleged limitation to sedentary work. However, Plaintiff's inferences are unfounded and his assertions of internal inconsistencies in the ALJ's decision are without merit.

First, Plaintiff's statement that Dr. Swedberg limited him "to sedentary work only" is refuted by the record. Dr. Swedberg's physical examination reflects mostly normal results and nowhere did he opine that Plaintiff was limited to sedentary work. In fact, Dr. Swedberg provided no specific opinions regarding Plaintiff's functional limitations at all. Rather, he opined only that Plaintiff remained capable of a "moderate amount" of various postural activities. (Tr. 329). Although Plaintiff cites to *Moeller v. Com'r*, 459 Fed. Appx. 868, 2012 WL 2947945 (6th Cir. 2012) to support his interpretation of that "moderate amount" opinion as consistent with sedentary work, *Moeller* is distinguishable. There, the appellate court noted that a consultant's limitation to a "<u>mild</u> amount" of sitting appeared to be inconsistent with the ALJ's finding that the plaintiff could sit for six hours per day. *Id.* at *1 (emphasis added). By contrast, Dr. Swedberg's opinion that Plaintiff retained the ability to engage in a "moderate amount" of various activities has been held to be consistent with medium work, as well as with light work. Notably, Dr. Swedberg opined that Plaintiff remained capable of a "moderate amount" of lifting "heavy objects," which

presumably would exceed the limitation to 20 pounds light exertional level assessed by the ALJ. (Tr. 329). Thus, there is no factual or legal support for Plaintiff's assertion that Dr. Swedberg's opinions were equivalent to a restriction to sedentary work. *See, e.g., Burton v. Com'r of Soc. Sec.*, 690 Fed. Appx. 398, 399 (6th Cir. June 27, 2017) (implying that a "moderate amount" of activities was consistent with medium work, but affirming ALJ's determination that Plaintiff could perform light work); *Stanley v. Com'r*, Case No. 1:14-cv-870, 2015 WL 9473402 (S.D. Ohio Dec. 2, 2015) (collecting cases and stating: "This Court has consistently found that such vague descriptors as 'moderate' amounts of standing and/or walking reasonably may be interpreted to support an exertional level of light, or even *medium* work." (emphasis original)).

Additionally, the ALJ did not fully adopt Dr. Swedberg's rather vague opinions, but gave them only "some" weight, concluding that Plaintiff's physical RFC was even more restricted than determined by Dr. Swedberg based upon the addition of "environmental limitations," such as the avoidance of unprotected heights and hazardous moving machinery. (Tr. 27). An ALJ is "not required to recite the medical opinion of a physician verbatim in his RFC. *See Poe v. Com'r of Soc. Sec.,* 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009); *see also Smith v. Colvin,* 2013 WL 6504681, at *11 (N.D. Ohio, Dec.11, 2013) ("[T]here is no requirement that an ALJ accept every facet of an opinion to which he assigns significant or substantial weight."); *Smith v. Com'r of Soc. Sec.,* 2013 WL 1150133 at *11 (N.D. Ohio, Mar.19, 2013) (same). In short, the ALJ's RFC determination, limiting Plaintiff to work at the light (and not sedentary) exertional level is substantially supported by all three of the consulting opinions, and his reliance on the consulting opinions reflects no internal inconsistencies.

Plaintiff similarly misinterprets the consultants' assessment of his "credibility." Neither of the consultants on whose opinions the ALJ relied had the opportunity to evaluate Plaintiff's 2016 hearing testimony before the ALJ, where Plaintiff alleged significantly greater functional limitations caused by his physical symptoms. Rather, the consultants were engaged in a review of Plaintiff's statements about his symptoms based upon his function report, (Tr. 203-208), and similar records, which they described as "relatively consistent" and "fully credible" at the time of their 2014 review. Plaintiff did not claim to be unable to walk or stand in his function report, but rather, stated that he became "uncomfortable" when standing for more than 30 minutes at a time or walking "long distances." (Tr. 208). However, he also stated that if he rested for 5 minutes, he could resume walking for another 20-30 minutes. (*Id.*) Additionally, he reported being able to lift up to 25 pounds, being able to help care for his adult son who is in a wheelchair, play with his grandkids, cook on the grill, prepare some meals, do some shopping, feed and water his four dogs, mow his lawn every week, do laundry and vacuum, socialize and watch TV. (Tr. 204-205). Thus, Plaintiff's function report appears to be consistent with the light exertional level assessed by the consultants.

2. *Consideration of Combined Impairments, Including Obesity*

Plaintiff's next asserts that the ALJ erred in evaluating the combined effects of his impairments including his obesity for the entire period, from January 2013, the onset date, until late 2015, when Plaintiff testified he lost approximately 100 pounds. In Plaintiff's initial 2014 disability report, he stated that he was 5 foot 11 inches tall and weighed 340 pounds. (Tr. 176). In June 2014, he weighed 325 pounds (Tr. 327) but by December 2015, he had substantially reduced his weight and BMI. (Tr. 494). Plaintiff argues, based solely on his weight loss between January 2013 and December 2015, that the ALJ

should have considered him to be limited to sedentary work for the closed time period when he was at his heaviest. I find no error.

At the time of Dr. Swedberg's report, Plaintiff still weighed 325 pounds. Yet Dr. Swedberg's findings and opinions are more consistent with light to medium exertional level work than with a limitation to sedentary work. In fact, numerous examining and treating sources, as well as the state agency non-examining consultants, were aware of Plaintiff's obesity but failed to offer any opinions that he had significant limitations resulting from that condition, or that his limitations were greater than those assessed by the ALJ in this case.

The consultants on whose opinions the ALJ most relied also reviewed the entirety of the record, including the time period when Plaintiff was at his heaviest, but still found Plaintiff to be capable of light work. The ALJ expressly referenced Plaintiff's heaviest weight, and noted that with the aid of medication, Plaintiff had been able to lose over 100 pounds as of December 2015, thereby further reducing his symptoms. (Tr. 23, 29).

SSR 02-1p does not mandate any particular mode of analysis with regard to obesity. *See generally Bledsoe v. Barnhart*, 165 Fed. Appx. 408 (6th Cir. Jan. 31, 2006). In his DIB application, Plaintiff did not even list obesity among the impairments he alleged to be disabling. Given the lack of any evidence that Plaintiff's obesity impacted his musculoskeletal, respiratory, cardiovascular or other body system functioning, the ALJ adequately considered Plaintiff's obesity.

### 3. Assessment of Symptoms Under SSR 16-3p

Last, Plaintiff asserts that the ALJ failed to comply with 20 C.F.R. § 404.1529 and SSR 16-3p (2016) in evaluating his subjective complaints.[1] The ALJ found that Plaintiff's

---

[1]SSR 16-3p, captioned as the "Evaluation of Symptoms in Disability Claims" replaces SSR 96-7p ("Assessing the Credibility of an Individual's Statements"), and applies to all decisions made after March

"medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 26).

The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination,[2] considers all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; see also 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text of the ruling in order to avoid "character analysis," much of the prior established case law appears applicable to SSR 16-3p. Thus, it remains the province of the ALJ and not the reviewing court, to

---

28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 26, 2017).

[2]SSR 16-3p formally eliminates the use of the term "credibility," in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.*

assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007); *but see Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564 at *8 (S.D. Ohio Nov. 28, 2017) (report and recommendation discussing new focus of SSR 16-3p), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

In this case, Plaintiff alleges that he suffers from disabling pain. The ALJ noted that Plaintiff's pain improved significantly after his weight loss. (Tr. 29, 503). Plaintiff complains that the ALJ erred in citing that factor, because his weight loss was not complete until 2015. However, Plaintiff's weight loss was only one factor among many that the ALJ considered. Arriving at his decision, the ALJ noted that despite his complaints of debilitating pain, physical examinations reflected essentially normal findings such as normal ranges of motion, normal muscle tone, and normal coordination. (Tr. 29, 258, 323-325, 327-39). In addition, the ALJ noted evidence of multiple treatments, including medication, weight loss, physical therapy, and steroid injections. He observed that Plaintiff had partially achieved his therapy goals by 2015. (Tr. 26-27, 372-74, 331, 508). However, even before physical therapy that further reduced his pain, Plaintiff reported his pain level ranged from a "2" to no more than a "6" on a 10-point scale. (Tr. 27). As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir. 1990) (affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).

The ALJ also properly considered the fact that Plaintiff's impairments did not prevent him from engaging in a wide variety of daily activities. (Tr. 29). *See* SSR 16-3p, 2017 WL 5180304 at *6-7. The ALJ noted that with rest breaks, Plaintiff was able to

complete household chores and yard work. (Tr. 29). Additionally, Plaintiff was independent in self-care and personal hygiene, cooked and cleaned, had an active driver's license and used public transportation alone. (Tr. 23-24, 29, 319). *See Heston v. Com'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001); *Smith v. Com'r of Soc. Sec.*, No. 1:09–cv–526, 2010 WL 5464889, at *7 (S.D. Ohio Aug. 24, 2010) (Wehrman, MJ) ("the ALJ also properly considered that plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding").

Plaintiff asserts that the ALJ should not have drawn any adverse inference from his receipt of unemployment benefits after Plaintiff was let go from his prior welding position. However, the ALJ did not even reference that issue. Even if he had, the Sixth Circuit has upheld consideration of a claimant's application for, or receipt of, unemployment benefits. *See. e.g. Kinsella v. Schweiker*, 708 F.2d 1058 (6th Cir.1983) (affirming adverse credibility determination based in part on the claimant's unemployment application); *see also Workman v. Com'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir.2004) (citing *Kinsella*, holding that adverse credibility determination is supported by the filing of an application for unemployment benefits during the same time period). In light of the foregoing, I find no error.

**III. Conclusion and Recommendation**

For the reasons stated, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ROBERT BRANDES,                          Case No. 1:17-cv-607

    Plaintiff,                          Black, J.
                                  Bowman, M.J.
    v.

NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).